IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-02582-RBJ

MAGICALL, INC.,

     Plaintiff,

v.

ADVANCED ENERGY INDUSTRIES, INC.,
AE SOLAR ENERGY, INC.,
ADVANCED ENERGY (SHENZHEN) CO., LTD.,
EAGLERISE ELECTRIC AND ELECTRIC CO., LTD.,
EAGLERISE E & E USA, INC. (CA),
EAGLERISE E & e USA, INC. (PA), and
EAGLERISE POWER SYSTEMS, INC.,

     Defendants.

---

## ORDER

---

The Eaglerise defendants in separate motions ask the Court to dismiss the complaint against them under various parts of Rule 12 of the Federal Rules of Civil Procedure. ECF Nos. 22 and 61. Both motions are granted.

## I. BACKGROUND.

The following facts are alleged by plaintiff, MAGicAll, Inc., in its Amended Complaint, ECF No. 16, and are assumed to be true for purposes of the pending motion. MAGicAll is an electrical component manufacturer. Sometime before 2009 it developed an inductor that dramatically improved inverter efficiency. It considered this product (presumably its design and manufacturer) to be a trade secret.

In 2009 MAGicAll entered into a confidentiality agreement with PV Powered, Inc. so that MAGicAll could provide proprietary information about the inductors to PV Powered, Inc. which was considering purchasing them. In 2019 defendant AE Solar Energy, Inc. acquired PV Powered, and MAGicAll consented to the assignment of PV Powered's rights and obligations under the confidentiality agreement to AE Solar. The same year MAGicAll entered into a non-disclosure agreement with AE Solar's parent company, defendant Advanced Energy Industries, Inc. ("AEI"), extending the agreement to maintain the confidentiality of information regarding MAGicALL's inductors to AEI and all its subsidiaries (the "AEI NDA").

AEI did begin to purchase the inductors from MAGicAll. Sometime thereafter AEI "rolled out" a new line of inverters that achieved high efficiency due, in part, to MAGicAll's inductor designs. In December 2012 and January 2013 AEI informed MAGicAll that it was planning to begin manufacturing inverters in China – first purchasing inductors from MAGicAll, and then shipping them to its Chinese operation where the inverters would be made.

AEI and AEI Solar continued to purchase inductors from MAGicAll throughout 2013 but eventually stopped such purchases. Thereafter AEI incorporated "knock-off copies" of MAGicAll's inductors, manufactured by Eaglerise-China, into its inverters. That led to the present suit in which MAGicAll named AEI, AEI Solar, Eaglerise China, and Eaglerise affiliates in California, Pennsylvania and Idaho, as defendants. The Amended Complaint asserts 10 claims: (1) breach of contract against the AEI defendants; (2) breach of contract against AEI Solar; (3) misappropriation of trade secrets against the AEI defendants in violation of 18 US.C. §§ 1836 and 1839; (4) misappropriation of trade secrets in violation of 18 US.C. §§ 1836 and 1839 against the Eaglerise defendants; (5) misappropriation of trade secrets in violation of Colo.

Rev. Stat. 7-73-103-105 against the AEI defendants; (6) misappropriation of trade secrets in violation of Colo. Rev. Stat. 7-73-103-105 against the Eaglerise defendants; (7) common law conversion against all defendants; (8) common law civil conspiracy against all defendants; (9) common law unjust enrichment against all defendants; and (10) declaratory judgment against all defendants.

The parties have since stipulated to the dismissal of MAGicAll's claims against one of the Eaglerise defendants, Eaglerise E & E USA, Inc. (PA). ECF No. 76. The Court now addresses the motions filed on behalf of the remaining Eaglerise defendants.

## II. ALLEGATIONS CONCERNING THE EAGLERISE DEFENDANTS.

The allegations in plaintiff's First Amended Complaint concerning the Eaglerise defendants, set forth in their entirety, are set forth below.[1]

- "Defendant Eaglerise-China is, on information and belief, a Chinese company with its principal place of business in Guangdong, China." ECF No. 16 at ¶5.

- "Defendant Eaglerise-ID is, on information and belief, a corporation organized under the laws of the State of Idaho with a principal place of business in Meridian, Idaho." *Id.* at ¶6.[2]

- **"This Court has personal jurisdiction over Eaglerise-China because Eaglerise-China has done business in Colorado." ECF No. 16 at ¶11 (emphasis added)**

---

[1] I have bolded the allegations that I find to be particularly relevant to the pending motions. I have also frequently underlined the nearly ubiquitous phrase "on information and belief" where it appears within a bolded allegation.

[2] There is no similar allegation regarding named defendant Eaglerise -CA in the Amended Complaint.

- **"This Court has personal jurisdiction over Eaglerise-CA because, <u>on information and belief</u>, Eaglerise-CA has done business in Colorado."** *Id.* **at ¶ 12 (emphasis added).**

- **"This Court has personal jurisdiction over Eaglerise-ID because, <u>on information and belief</u>, Eaglerise-ID has done business in Colorado."** *Id.* **at ¶ 14 (emphasis added).**

- "The knock-off inductors used by AEI were manufactured by Eaglerise-China and were identical to MAGicAll's proprietary inductors." *Id.* at ¶ 50.

- "AEI and/or its subsidiaries breached the AEI NDA by copying MAGicALL's proprietary inductor technology and/or by providing Eaglerise-China with MAGicALL's inductor drawings and/or MAGicALL's inductors and requesting that Eaglerise-China manufacture and sell the same to AEI." *Id.* at ¶58.

- "On information and belief, one or more of the AE Defendants provided MAGicAll drawings to Eaglerise-China with specific intent to supplant MAGicAll as a supplier and in violation of the AEI NDA" *Id.* at ¶61.

- "On information and belief, Eaglerise-China produced drawings having MAGicALL's inductor designs on them." *Id.* at ¶62.

- "After the AEI and AE Solar stopped purchasing inductors from MAGicALL but without MAGicALL's knowledge or consent, on information and belief, the AE Defendants continued manufacturing products incorporating MAGicALL's inductor design throughout 2014 and 2015 by purchasing the knock-off inductors from Eaglerise-China." *Id.* at ¶63.

- "On information and belief the Eaglerise defendants are now selling copies of MAGicAll's inductors to other customers in the marketplace." *Id.* at ¶64.

- "On information and belief, AEI breached its covenant of good faith and fair dealing by passing MAGicALL's technology to Eaglerise-China or others with the intent to avoid its contractual obligations to MAGicAll." *Id.* at ¶66.

- "The AE Defendants have also repeatedly breached the AEI NDA by continuing to order knock-off inductors from Eaglerise-China." *Id.* at ¶67.

- "On information and belief, AE Solar or its agents provided MAGicAll drawings to Eaglerise-China with specific intent to supplant MAGicAll as a supplier and in violation of the non-disclosure agreement." *Id.* at ¶74.

- "On information and belief, Eaglerise-China produced drawings having MAGicALL's inductor designs on them." *Id.* at ¶75.

- "After AEI and AE Solar stopped purchasing inductors from MAGicAll, on information and belief, without MAGicALL's knowledge or consent, the AE Defendants continued manufacturing products incorporating MAGicALL's inductor design throughout 2014 and 2015 by purchasing the knock-off inductors from Eaglerise-China." *Id.* at ¶76.

- "On information and belief, the Eaglerise Defendants are now selling knock-off copies of MAGicALL's inductors to other customers in the marketplace." *Id.* at ¶77.

- "On information and belief, AE Solar breached its covenant of good faith and fair dealing by, among other things, passing MAGicALL's technology to Eaglerise-China with the intent to avoid its contractual obligations to MAGicALL." *Id.* at ¶79.

- "AE Solar has also repeatedly breached the PV Powered NDA by continuing to order inductors from Eaglerise-China." *Id.* at ¶80.

- "On information and belief, knowingly and without authorization, AEI AE Solar, and or AEI-China communicated MAGicALL's trade secret information to Eaglerise-China by providing Eaglerise-China with a MAGicALL inductor." *Id.* at ¶90.

- "On information and belief, knowingly and without authorization, AEI, AE Solar, and/or AEI-China communicated MAGicAll's trade secret information to Eaglerise-China by providing Eaglerise-China with a copy of MAGicALL's inductor drawing." *Id.* at ¶91.

- "On information and belief, knowingly and without authorization, AEI, AE Solar, and/or AEI-China communicated MAGicALL's trade secret information to Eaglerise-China in another manner." *Id.* at ¶92.

- **"<u>On information and belief</u>, AEI, AE Solar, and/or AEI-China knowingly conspired with Eaglerise-China or other Eaglerise Defendants to commit these offenses. *Id.* at ¶93 (emphasis added)**

- "On information and belief, AEI, AE Solar, and/or AEI-China communicated MAGicALL's trade secret information to Eaglerise-China with the intent to convert the trade secret to its own economic benefit. Specifically, AEI, AE Solar, and/or AEI-China intended to purchase inductors from Eaglerise-China rather than MAGicALL, thereby reducing their costs." *Id.* at ¶94.

- "On information and belief, AEI, AE Solar, and/or AEI-China proceeded to order inductors from Eaglerise-China instead of MAGicALL as a direct result of their misappropriation of MAGicALL's trade secrets." *Id.* at ¶95.

- "AEI's, AE Solar's, and AEI-China's conduct was willful and malicious because they knew the inductor technology was a trade secret of MAGicALL due to the non-disclosure agreements, the notations on the drawings, and the sensitive nature of the technology, and they communicated the technology and trade secrets to Eaglerise-China or others in order to end their purchases from MAGicALL in favor of purchases at a costs savings from Eaglerise-China." *Id.* at ¶106.

- "On information and belief, knowingly and without authorization, AEI, AE Solar, and/or AEI-China communicated MAGicALL's trade secret information to Eaglerise-China by providing Eaglerise-China with a MAGicALL inductor." *Id.* at ¶113.

- "On information and belief, knowingly and without authorization, AEI, AE Solar, and/or AEI-China communicated MAGicALL's trade secret information to Eaglerise-China by providing Eaglerise-China with a copy of MAGicALL's inductor drawing." *Id.* at ¶114.

- "On information and belief, knowingly and without authorization, AEI, AE Solar, and/or AEI-China communicated MAGicALL's trade secret information to Eaglerise-China in another manner." *Id.* at ¶115.

- **"At the time AEI, AE Solar, and/or AEI-China disclosed MAGicALL's trade secret information to Eaglerise-China, Eaglerise China knew or had reason to know that AEI, AE Solar, and AEI-China owed a duty to MAGicALL to maintain the secrecy of MAGicALL's trade secrets." *Id.* at ¶116 (emphasis added).**

- "On information and belief, on or more of the Eaglerise Defendants copied, duplicated, or replicated MAGicALL's trade secret information by copying MAGicALL's inductor." *Id.* at ¶117.

- "On information and belief, one or more of the Eaglerise Defendants copied, duplicated, or replicated MAGicALL's trade secret information by copying MAGicALL's inductor drawings." *Id.* at ¶118.

- "On information and belief, one or more of the Eaglerise Defendants copied, duplicated, or replicated MAGicALL's trade secret information in another manner." *Id.* at ¶119.

- **"Additionally or alternatively, <u>on information and belief</u>, one or more of the Eaglerise Defendants knowingly conspired with AEI-China or the other AE Defendants to commit these offenses."** *Id.* **at ¶120 (emphasis added).**

- **"<u>On information and belief</u>, the Eaglerise Defendants acquired and used MAGicALL's trade secrets for the purpose of displacing MAGicALL as a supplier of inductors to the AE Defendants."** *Id.* **at ¶121 (emphasis added).**

- "On information and belief, one or more of the Eaglerise Defendants supplied and continues to supply inductors incorporating MAGicALL's trade secrets to the AE Defendants." *Id.* at ¶122.

- "On information and belief, Eaglerise-China disclosed MAGicALL's trade secrets to its U.S. Subsidiaries, Eaglerise-CA, Eaglerise-PA and Eaglerise-ID, and sold products incorporating MAGicALL's trade secrets to those subsidiaries for resale in the U.S. market." *Id.* at ¶123.

- **"<u>On information and belief</u>, at the time Eaglerise-China disclosed MAGicALL's trade secrets to its U.S. subsidiaries, Eaglerise-CA, Eaglerise-PA and Eaglerise-ID knew or had reason to know that Eaglerise-China had acquired the trade secrets**

through improper means and that the AE Defendants owed a duty to MAGicALL to maintain the secrecy of MAGicALL's trade secrets." *Id.* at ¶124 (emphasis added).

- "The conduct of Eaglerise-China, Eaglerise – CA, Eaglerise-PA and Eaglerise-ID was willful and malicious because they knew the inductor technology was a trade secret of MAGicALL due to the notations on the MAGicALL drawings they had seen, and the sensitive nature of the technology. The Eaglerise Defendants copied the technology with the goal of cutting off business between the AE Defendants and MAGicALL by bypassing the design and development phase to provide a less expensive inductor with the same qualities to the AE Defendants." *Id.* at ¶125 (emphasis added).

- "As a result of the Eaglerise Defendants' willful and malicious misappropriation of MAGicALL's trade secrets and other confidential information, MAGicALL is entitled to injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A), as well as damages pursuant to 18 U.S.C. § 1836(b)(3)(B), and exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C), and attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)D), in amounts to be determined at trial." *Id.* at ¶ 126 (emphasis added).

- "On information and belief, without authorization and having a duty to maintain its secrecy, AEI, AE Solar, and/or AEI-China communicated MAGicALL's trade secret information to Eaglerise-China by providing Eaglerise-China with a MAGicALL inductor." *Id.* at ¶132.

- "On information and belief, knowingly and without authorization, AEI, AE Solar, and/or AEI-China communicated MAGicALL's trade secret information to Eaglerise-China by providing Eaglerise-China with a MAGicALL inductor." *Id.* at ¶136.

- "On information and belief, knowingly and without authorization, AEI, AE Solar, and/or AEI-China communicated MAGicALL's trade secret information to Eaglerise-China by providing Eaglerise-China with a copy of MAGicALL's inductor drawing." *Id.* at ¶137.

- "On information and belief, knowingly and without authorization, AEI, AE Solar, and/or AEI-China communicated MAGicALL's trade secret information to Eaglerise-China in another manner. *Id.* at ¶138.

- **"<u>On information and belief</u>, AEI, AE Solar, and/or AEI-China conspired with Eaglerise-China or the other Eaglerise Defendants to commit these offenses." *Id.* at ¶139 (emphasis added).**

- "On information and belief, AEI, AE Solar, and/or AEI-China communicated MAGicALL's trade secret information to Eaglerise-China with the intent to convert the trade secret to its own economic benefit. Specifically, AEI, AE Solar, and/or AEI-China intended to purchase inductors from Eaglerise-China rather than MAGicALL, thereby reducing its costs." *Id.* at ¶140.

- "On information and belief, AEI, AE Solar, and/or AEI-China proceeded to order inductors from Eaglerise-China instead of MAGicALL as a direct result of their misappropriation of MAGicALL's trade secrets. *Id.* at ¶141.

- "AEI's, AE Solar's, and AEI-China's conduct was willful and malicious because they knew the inductor technology was a trade secret of MAGicALL due to the non-disclosure

agreements, the notations on the drawings, and the sensitive nature of the technology, and

they communicated the technology and trade secrets to Eaglerise-China or others in order

to end their purchases from MAGicALL in favor of purchases at a cost savings from

Eaglerise-China." *Id.* at ¶143.

- "On information and belief, knowingly and without authorization, AEI, AE Solar, and/or AEI-China communicated MAGicALL's trade secret information to Eaglerise-China by providing Eaglerise-China with a MAGicALL inductor." *Id.* at ¶150.

- "On information and belief, knowingly and without authorization, AEI, AE Solar, and/or AEI-China communicated MAGicALL's trade secret information to Eaglerise-China by providing Eaglerise-China with a copy of MAGicALL's inductor drawing." *Id.* at ¶151.

- "On information and belief, knowingly and without authorization, AEI, AE Solar, and/or AEI-China communicated MAGicALL's trade secret information to Eaglerise-China in another manner." *Id.* at ¶152.

- **"At the time AEI, AE Solar, and/or AEI-China disclosed MAGicALL's trade secret information to Eaglerise-China, Eaglerise-China knew or had reason to know that AEI, AE Solar, and AEI-China owed a duty to MAGicALL to maintain the secrecy of MAGicALL's trade secrets." *Id.* at 153 (emphasis added).**

- "On information and belief, the Eaglerise Defendants copied, duplicated, or replicated MAGicALL's trade secret information by copying MAGicALL's inductor. *Id.* at ¶154.

- "On information and belief, the Eaglerise Defendants copied, duplicated, or replicated MAGicALL's trade secret information by copying MAGicALL's inductor drawings." *Id.* at ¶155.

- On information and belief, the Eaglerise Defendants copied, duplicated, or replicated MAGicALL's trade secret information in another manner.  *Id.* at ¶156.

- **"Additionally or alternatively, <u>on information and belief</u>, one or more of the Eaglerise Defendants knowingly conspired with AEI-China or the other AE Defendants to commit these offenses.  *Id.* at ¶157 (emphasis added).**

- **"<u>On information and belief</u>, the Eaglerise Defendants acquired and used MAGicALL's trade secrets for the purpose of displacing MAGicALL as a supplier of inductors to the AE Defendants."  *Id.* at ¶158 (emphasis added).**

- "On information and belief, Eaglerise-China supplied inductors incorporating MAGicALL's trade secrets to the AE Defendants."  *Id.* at ¶159.

- "On information and belief, Eaglerise-China disclosed MAGicALL's trade secrets to its U.S. subsidiaries, Eaglerise – CA, Eaglerise-PA and Eaglerise-ID, and sold products incorporating MAGicALL's trade secrets to those subsidiaries for resale in the U.S. market."  *Id.* at ¶160.

- **"<u>On information and belief</u>, at the time Eaglerise-China disclosed MAGicALL's trade secrets to its U.S. subsidiaries, Eaglerise – CA, Eaglerise-PA and Eaglerise-ID knew or had reason to know that Eaglerise-China had acquired the trade secrets through improper means and that AEI owed a duty to MAGicALL to maintain the secrecy of MAGicALL's trade secrets."  *Id.* at ¶161 (emphasis added).**

- **"The conduct of Eaglerise-China, Eaglerise – CA, Eaglerise-PA and Eaglerise-ID was willful and malicious because they knew the inductor technology was a trade secret of MAGicALL due to the notations on the MAGicALL drawings it had seen,**

and the sensitive nature of the technology.  The Eaglerise Defendants copied the technology with the goal of cutting off business between the AE Defendants and MAGicALL by bypassing the design and development phase to provide a less expensive inductor with the same qualities to AEI." *Id.* at ¶162 (emphasis added).

- **"As a result of the Eaglerise Defendants' willful and malicious misappropriation of MAGicALL's trade secrets and other confidential information, MAGicALL is entitled to injunctive relief pursuant to C.R.S.A. § 7-74-103, as well as damages pursuant to C.R.S.A. § 7-74-104(1), and exemplary damages pursuant to C.R.S.A. § 7-74-104(2), and attorneys' fees pursuant to C.R.S.A. § 7-74-105, in amounts to be determined at trial."** *Id.* **at ¶163 (emphasis added).**

- "On information and belief, Defendants had a goal of copying MAGicALL's trade secret protected inductor design so that Eaglerise-China could manufacture, and the AE Defendants could purchase, MAGicALL's proprietary technology at a reduced price." *Id.* at ¶170.

- "On information and belief, the AE Defendants provided a MAGicALL inductor to Eaglerise-China with the understanding that if Eaglerise-China copied it, the AE Defendants would purchase inductors from Eaglerise-China instead of MAGicALL." *Id.* at ¶171

- **"<u>On information and belief</u>, Eaglerise-China also knew MAGicALL's inductor technology was to be kept confidential because, among other things, MAGicALL's drawings identified its inductors as such."** *Id.* **at ¶173 (emphasis added).**

- "On information and belief, Eaglerise-China accepted delivery of the MAGicALL inductor and copied the inductor design." *Id.* at ¶174.\

- "On information and belief, Eaglerise-China provided MAGicALL's proprietary inductor design to its U.S. subsidiaries, Eaglerise–CA, Eaglerise–PA and Eaglerise--ID." *Id.* at ¶175.

- **"<u>On information and belief</u>, Eaglerise-China obtained valuable inductor technology by bypassing any design and development phase and, instead, stole the technology from MAGicALL."** *Id.* **at ¶181 (emphasis added).**

### III. <u>STANDARD OF REVIEW.</u>

**A. <u>Personal Jurisdiction -- Rule 12(b)(2).</u>**

1. <u>Procedure</u>.

The court may, in its discretion, address a Rule 12(b)(2) motion based solely on the documentary evidence on file or by holding an evidentiary hearing. *See FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). Where the court rules on the motion based only on the documentary evidence before it, the plaintiff may meet its burden with a prima facie showing of personal jurisdiction. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004). The court "tak[es] as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged" in the complaint, and "any factual disputes in the parties' affidavits must be resolved in plaintiff's favor." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). However, when an evidentiary hearing is held in order to resolve factual disputes relating to jurisdictional questions, the plaintiff must prove facts supporting jurisdiction by a preponderance of the evidence. *See Oaklawn*, 959 F.2d at 174.

In this case neither party has requested a hearing. Both parties have submitted affidavits and other documents in support of their respective positions. The Court elects to resolve the motion based on the evidence submitted.

2. Due Process.

To establish personal jurisdiction over an out-of-state defendant, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010). Colorado's "long-arm" statute, C.R.S. § 13-1-124, has been interpreted to confer the maximum jurisdiction permitted by constitutional due process. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). Therefore, this Court need only determine whether exercise of jurisdiction over the defendants comports with due process.

3. Minimum Contacts.

The Due Process Clause "operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984). In order to exercise jurisdiction, the out-of-state defendant must have "minimum contacts" with the forum state such that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash. Office of Unemployment Comp. and Placement*, 326 U.S. 310, 323 (1945). Minimum contacts must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denkla*, 357 U.S. 235, 253 (1958). A defendant's contacts with the forum

must be such that the defendant could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

    4. <u>General and Specific Jurisdiction</u>.

Minimum contacts may be established in two ways. First, general jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state such that exercising personal jurisdiction is appropriate even if the cause of action does not arise out of those contacts. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Second, specific jurisdiction exists where the cause of action is "related to" or "arises out of" the defendant's activities within the forum state. *See Helicopteros Nacionales*, 466 U.S. at 414 (citation omitted). In such cases, jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original) (citations omitted). This inquiry "ensure[s] that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov* 514 F.3d 1063 at 1071.

    5. <u>Burden of Proof</u>.

The burden of proof is on the plaintiff to establish minimum contacts. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). "Once the plaintiff establishes minimum contacts, the defendant is responsible for demonstrating 'the presence of other considerations that render the exercise of jurisdiction unreasonable.'" *Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*, 682 F. Supp. 2d 1237, 1244–45 (D. Colo. 2010) (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)). The Supreme Court has identified the

following factors to be considered in this analysis: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 476–77.

**B. Failure to State a Claim – Rule 12(b)(6).**

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## IV. **ANALYSIS AND CONCLUSIONS**.

### A. **Personal Jurisdiction**.

The Eaglerise defendants contend that plaintiff has not established this Court's personal jurisdiction over them. ECF No. 22 at 4-11. I agree.

Plaintiff's allegations that the Eaglerise defendants do business in Colorado are set forth in three paragraphs of the Amended Complaint, ECF No. 16:

> 11. This Court has personal jurisdiction over Eaglerise-China because Eaglerise-China has done business in Colorado.
>
> 12. This Court has personal jurisdiction over Eaglerise-CA because, *on information and belief,* Eaglerise-CA has done business in Colorado. (emphasis added.
>
> 14. This Court has personal jurisdiction over Eaglerise-ID because, *on information and belief,* Eaglerise-ID has done business in Colorado. (emphasis added).

Paragraph 11 concerning Eaglerise-China is conclusory. Even under the most liberal standard accorded plaintiffs in alleging jurisdictional facts, this conclusory allegation is lacking. *See Dudnikov,* 514 F.3d 1063 at 1070. Paragraphs 12 and 13 are equally conclusory, and even the conclusory allegations are only asserted "on information and belief."[3]

To any extent that the numerous other allegations concerning the participation of the Eaglerise defendants in the AEI defendants' allegedly wrongful conduct might be said to relate to personal jurisdiction, they too, as discussed briefly below, are too conclusory to shore up plaintiff's jurisdictional claim.

---

[3] The Eaglerise defendants have submitted affidavits from Roger "Nan" Wu disputing that they have done business in Colorado. ECF Nos. 61-2. I need not rely on that affidavit because plaintiff's allegations are insufficient on their face to support personal jurisdiction over any Eaglerise defendant.

**B. Failure to State a Claim.**

Because this Court lacks personal jurisdiction over the Eaglerise defendants it need not reach or decide whether the Amended Complaint otherwise states a claim for relief upon which relief could be granted. If I were to reach that issue, however, I would likely find that the Amended Complaint fails to state a claim.

The substance of MAGicALL's claims is that one or more of the AEI defendants obtained MAGicALL's proprietary information concerning its high efficiency inductor under the guise of purchasing inductors from MAGicALL and then decided to purchase "knock-offs" of the inductors elsewhere. In order to accomplish this unlawful objective, the AEI defendants provided MAGicALL's proprietary information to a Chinese company, Eaglerise-China, which produced inductors pursuant to the information provided. To that extent I am not sure how Eaglerise-China has acted unlawfully.

I bolded the paragraphs where MAGicALL accused Eaglerise-China of more nefarious conduct, i.e., that Eaglerise knew that it was acting unlawfully; that it conspired with the AEI defendants to steal MAGicAll's trade secrets; and that it did these things willfully and maliciously. But these bolded paragraphs, while numerous and repetitive, are themselves conclusory, and frequently even the conclusory allegations are only based "on information and belief." One may not involve a company, foreign or domestic, in expensive and time consuming federal court litigation because he thinks that the defendant might have done something wrong and hopes to find something in discovery that will show it. That is backwards. I quoted virtually every allegation in the Amended Complaint concerning the Eaglerise defendants not just to highlight the repetitive nature of the pleading but instead to illustrate how lacking in actual

factual content these allegations are. We still have some semblance of "notice pleading" in modern litigation practice, but plaintiffs must at least allege some facts that plausibly show that plaintiff has a case. I do not find that here.

If MAGicALL discovers facts during its investigation and discovery that, if true, might implicate Eaglerise-China or any of its subsidiaries in wrongful conduct (and if MAGicALL discovers facts that would get it over the personal jurisdiction hurdle), then it may seek leave to amend its complaint.

## V. <u>ORDER</u>.

1. The Eaglerise defendants' motions to dismiss, ECF Nos. 22 and 61, are GRANTED in part and MOOT in part. The Court concludes that plaintiff has not established personal jurisdiction over any of them. The remaining issues raised in the motions are moot in light of this Court's lack of jurisdiction. All claims against the Eaglerise defendants are dismissed without prejudice.

2. As the prevailing parties the Eaglerise defendants are awarded their reasonable costs to be taxed by the Clerk of Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 30th day of July, 2018

BY THE COURT:

R. Brooke Jackson
United States District Judge