**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:17-cv-02582-DDD-NRN

MAGICALL, INC.,

           Plaintiff,

v.

ADVANCED ENERGY INDUSTRIES, INC.,
AE SOLAR ENERGY, INC.,
ADVANCED ENERGY (SHENZHEN) CO., LTD.,
EAGLERISE ELECTRIC AND ELECTRONIC CO., LTD,
EAGLERISE E & E USA, INC. (CA);
EAGLERISE E & E USA, INC. (PA), and
EAGLERISE POWER SYSTEMS, INC.,

           Defendants.

---

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (COUNT I)
(CORRECTED)**

---

Plaintiff MAGicALL, Inc. ("MAGicALL") respectfully moves this Court to grant partial summary judgment for MAGicALL on Count I of its First Amended Complaint (the "Motion") because there is no genuine dispute of the facts material to that claim, and MAGicALL is entitled to judgment as a matter of law.

**<u>INTRODUCTION</u>**

From 2007 through 2013, MAGicALL designed and manufactured custom, super-efficient, lightweight inductors at a remarkably low cost. MAGicALL's inductors lived up to their name— almost like magic, they were incredibly efficient for their size and cost due to the novel design of the inductors, reflecting several Key Design Features, developed over years of painstaking work by MAGicALL's co-owner and lead designer, Dr. Dan Qin. Defendants were so impressed with

MAGicALL's inductors they dropped their current inductor suppliers and made MAGicALL their sole supplier for the relevant inductors.

Understandably, MAGicALL was protective of its revolutionary inductor designs, and required mutual non-disclosure agreements before agreeing to design or manufacture inductors for Defendants. These nondisclosure agreements strictly limited what Defendants could do with MAGicALL's confidential information about its inductor designs. Among other things, the nondisclosure agreements prohibited Defendants from sharing MAGicALL's confidential information with MAGicALL's competitors.

As the competition in the solar industry increased, Defendants began looking at ways to cut costs—including in the components of their solar inverters. Defendants desperately wanted to replace MAGicALL's inductors with cheaper inductors made in China, but could not find a manufacturer capable of designing inductors that could match MAGicALL's combination of efficiency, size, and cost. As a result, over the course of 2011 and 2012, Defendants' engineers began spoon-feeding nuggets of technical information regarding MAGicALL's proprietary inductor designs to MAGicALL's competitor, Eaglerise. This information allowed Eaglerise to by-pass the years of trial-and-error design effort it took MAGicALL to create its designs and instead simply start manufacturing drop-in replacements for MAGicALL's inductors.

In 2013, Advanced Energy fully replaced MAGicALL as an inductor supplier in favor of Eaglerise (using knock-off MAGicALL designs), leaving MAGicALL out millions of dollars of lost profits from its primary inductor customer and with its confidential information and proprietary design disclosed to its industry competitors.

The record contains no dispute that Advanced Energy breached its nondisclosure agreement with MAGicALL by disclosing confidential information about its inductors to

MAGicALL's competitors. Accordingly, MAGicALL is entitled to summary judgment on its Count I, for breach of the 2010 NDA.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

**I.    The Parties' Non-Disclosure Agreements**

1.    Between 2007 and 2014, Defendant Advanced Energy Industries, Inc. itself and through its subsidiaries or business units (collectively, "Advanced Energy") was a manufacturer of power inverters for the solar industry. (ECF-194-56 at ¶2) [1]

2.    In 2007, Advanced Energy provided MAGicALL with a proposed Mutual Nondisclosure Agreement (the "2007 NDA") and asked MAGicALL to accept it by signing and returning it. (ECF-194-56 at ¶3; ECF-194-1)

3.    MAGicALL accepted, executed and returned the 2007 NDA as requested. (*Id.*)

4.    The 2007 NDA prohibited each party from disclosing the other's confidential information. (ECF-194-1 at 1, ¶2)

5.    After accepting Advanced Energy's 2007 NDA, MAGicALL began working to create custom-designed inductors for use in Advanced Energy's inverters. (ECF-194-56 at ¶3)

6.    In 2008-2010, PV Powered ("PVP") was also a manufacturer of power inverters for the solar industry. (ECF-194-56 at ¶4)

7.    MAGicALL and PVP executed PVP's proposed Mutual Nondisclosure and Confidentiality Agreement effective July 14, 2009 (the "2009 NDA"). (ECF-194-56 at ¶5; ECF-195-1 at 1)

8.    The 2009 NDA protected MAGicALL and PVP's "Confidential Information," which was defined to include a discloser's: (a) proprietary information, (b) information marked or

---

[1] All record citations in this Motion are to the separate Electronic Case Filing ("ECF") number in the Court's docket.

designated as confidential; (c) information known to be treated as confidential; and (d) technical information, trade secrets, know-how, ideas, designs, drawings, specifications, techniques, systems, and processes. (ECF-195-1, ¶1)

9.      Pursuant to the 2009 NDA, both MAGicALL and PVP agreed that neither party would disclose or use the other's Confidential Information without specific prior written authorization. (ECF-195-1, ¶2.1)

10.     The 2009 NDA was a valid and enforceable contract, was never terminated by the parties, and remained in full force and effect at least through July 14, 2014. (ECF-194-56 at ¶7; ECF-195-1, ¶6.11; ECF-195-2 at Reqs. 10-11)

11.     The 2009 NDA was binding on, and accrued to the benefit of PVP and its successors and assigns. (ECF-195-1, ¶6.3)

12.     Advanced Energy acquired PVP in March 2010, and thereafter operated PVP as a wholly controlled subsidiary known as AE Solar Energy, Inc. (ECF-194-3 at 19:25-20:5; ECF-194-4 at 149:13-23)

13.     Advanced Energy assumed PVP's rights and obligations under the 2009 NDA at the time it acquired PVP. (ECF-194-56 at ¶8; ECF-195-2 at Req. 11; ECF-194-4 at 125:24-128:9)

14.     After Advanced Energy acquired PVP, Advanced Energy and MAGicALL executed a second Mutual Nondisclosure Agreement effective July 2, 2010 (the "2010 NDA"). (ECF-194-56 at ¶9; ECF-194-2)

15.     The 2010 NDA protects, among other things, MAGicALL's "Confidential Information," defined as "any and all technical and non-technical information" disclosed by MAGicALL including "trade secrets,… ideas, processes,… data,… know-how, improvements,

discoveries, developments, designs, and techniques," and "information regarding products,[and] prices…" (ECF-194-2, ¶1)

16.     Pursuant to the 2010 NDA, the parties agreed that they would use the Confidential Information for no purpose other than the parties' "discussions regarding design, manufacture, and supply of magnetic components." (ECF-194-2, ¶ 2)

17.     The 2010 NDA is a valid and enforceable contract, has never been terminated, and remains in full force and effect today. (ECF-194-56 at ¶10; ECF-194-2, ¶ 6; ECF-195-2 at Reqs. 8-9)

18.     After the 2010 NDA was executed, it protected Confidential Information exchanged between MAGicALL and both Advanced Energy and AE Solar. (ECF-194-4 at 123:12-124:11)

19.     There is no evidence that MAGicALL ever breached or failed to perform any of its obligations under any of the NDAs. (ECF-194-56 at ¶11)

## II.     MAGicALL protected its intellectual property.

20.     Between 2007 and 2012, MAGicALL designed innovative "inductors" that were more efficient, physically smaller, and lighter weight than its competitors' inductors. (ECF-194-56 at ¶12)

21.     As applicable to this Motion, MAGicALL created four custom-designed inductors for use in Advanced Energy and PVP inverters, which MAGicALL informally called its 100kW, 260kW, 500kW, and 500kW-HE inductors ("MAGicALL's Inductors"). (ECF-194-56 at ¶12)

22.     Each of MAGicALL's Inductors was unique, but each also contained ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "Key Design Features"). (ECF-194-56 at ¶13)

5

23.     MAGicALL protected its custom inductor designs and, specifically, its Key Design Features, from disclosure to competitors by, among other things, controlling employee access to the designs, controlling access to the manufacturing process and facility, applying a confidentiality designation on drawings depicting the products, shipping products in protective boxes so they could not be observed during transit, securing non-disclosure agreements with its customers, requiring customers to apply MAGicALL's confidentiality designation on drawings they made, objecting to potential product disclosure risks, and seeking return of damaged products so they could be disposed of safely. (ECF-194-56 at ¶¶15-16; ECF-194-57 at ¶¶9-10)

24.     MAGicALL's inductor designs and its Key Design Features were Confidential Information under the 2009 NDA and 2010 NDA. (ECF-194-56 at ¶14; ECF-194-2, ¶1; ECF-195-1, ¶1)

25.     MAGicALL owned its inductor designs and had instructed Advanced Energy to keep its designs confidential. (ECF-194-37; ECF-194-38; ECF-194-39; ECF-194-40; ECF-194-41)

26.     There is no evidence that any of MAGicALL's Confidential Information regarding its inductor designs or its Key Design Features were obtained by Eaglerise from any source other than from Advanced Energy. (ECF-194-56 at ¶¶34, 38; ECF-194-57 at ¶¶43, 48; ECF-194-3 at 97:17-98:22; ECF-194-4 at 175:7-12, 177:13-178:8)

27.     There is no evidence that MAGicALL ever authorized the disclosure of any of MAGicALL's Confidential Information to Eaglerise. (ECF-194-56 at ¶33; ECF-194-57 at ¶42)

28.     MAGicALL's competitors, Frost Magnetics, Inc., Precision, Inc., and former Defendant Eaglerise Electric and Electronic (China) Co., Ltd ("Eaglerise") were not producing inductors that incorporated the Key Design Features in 2009-2011. (ECF-194-57 at ¶¶14-21)

6

III.    **Advanced Energy Breached the 2010 NDA by improperly using and disclosing MAGicALL's Confidential Information.**

29.    In July 2012, Advanced Energy sought quotes for inductors for its new ███████ inverter. (ECF-194-57 at ¶24; ECF-194-5 at 1-2)

30.    Advanced Energy posted a specification on its bidding platform that consisted of an image of an inductor and the inductor's proposed electrical requirements. (*Id.*)

31.    The inductor image posted by Advanced Energy was a "snapshot" from a confidential 3-D image file of MAGicALL's 500kW inductor. (ECF-194-57 at ¶¶24-25)

32.    Advanced Energy was aware that use of information regarding MAGicALL's 500kW inductor may violate the 2010 NDA, but decided to use it anyway. (ECF-194-57 at ¶¶25, 30; ECF-194-8 at 1; ECF-194-9 at 1)

33.    The image posted by Advanced Energy disclosed that MAGicALL's inductor utilized ███████████████████████████████████████████████████ ██████████████████████████████████████████████ (ECF-194-57 at ¶26; ECF-194-10 at 3)

34.    Advanced Energy gave Eaglerise access to the posted image of MAGicALL's inductor on July 27, 2012 ("July 2012 Disclosure"). (ECF-194-57 at ¶27; ECF-194-5; ECF-194-11 at 2)

35.    On August 3, 2012, just six days later, Eaglerise provided Advanced Energy with an inductor drawing that copied and incorporated nearly every material design feature depicted in the posted image of MAGicALL's inductor. (ECF-194-57 at ¶28; ECF-194-12 at 1-3)

36.    Prior to observing the MAGicALL inductor image as part of the July 2012 Disclosure, Eaglerise's only disclosed design strategy for its Advanced Energy inductors was

entirely different ████████████████████████████████████████████████
████████████████ (ECF-194-57 at ¶29; ECF-194-13 at 1, 6)

37.    There is no evidence that any Eaglerise inductor design created for Advanced
Energy or PVP utilized the Key Design Features prior to the July 2012 Disclosure. (ECF-194-56
at ¶25; ECF-194-57 at ¶ 29; ECF-194-3 at 91:1-19)

38.    There is no evidence that Eaglerise designed inductors for other customers utilizing
all of the Key Design Features prior to the July 2012 Disclosure. (*Id.*)

39.    There is no evidence that anyone associated with PVP disclosed any Confidential
Information about the inner workings of MAGicALL's inductor designs, prior to Advanced
Energy acquiring PVP. (ECF-194-56 at ¶35; ECF-194-57 at ¶44)

40.    In August 2012, Advanced Energy discovered that Eaglerise inductors were bigger
than MAGicALL's inductors because Eaglerise ████████████████████████████████████
████████████████ (ECF-194-14 at 1)

41.    Advanced Energy decided to have its engineers "engage directly with Eaglerise on
inductor design." (ECF-194-15 at 1)

42.    That same day, Advanced Energy asked Eaglerise to provide quotes for designs
that ████████████████████████ (ECF-194-16 at 1)

43.    Advanced Energy also put its engineers "in contact with Eaglerise to help explain
to them what design changes we need them to make for the inductors to work." (ECF-194-17 at 1)

44.    Advanced Energy later sent Eaglerise images comparing the size of Eaglerise's
proposed inductors with the size and shape of MAGicALL's inductors, and also the size of
Eaglerise's existing transformers. (ECF-194-57 at ¶34; ECF-194-19; ECF-194-20; ECF-194-21 at
2; ECF-194-22 at 1-2)

45.    Advanced Energy's decision to show MAGicALL's 100kW and 260kW inductors sitting on top of Eaglerise's transformer gave Eaglerise valuable information about the relative size of MAGicALL's inductors in addition to the confidential design strategies MAGicALL was using to meet the required specification at that size. (ECF-194-57 at ¶34)

46.    Advanced Energy also provided Eaglerise with the precise dimensions of MAGicALL's 500kW inductor. (ECF-194-18 at 1)

47.    The precise dimensions of MAGicALL's inductor was Confidential Information under both the 2009 NDA and the 2010 NDA. (ECF-194-57 at ¶35)

48.    Advanced Energy later provided Eaglerise with the actual power loss that MAGicALL was able to achieve with its 500kW-HE design so that Eaglerise could use that information to better design its proposed inductors. (ECF-194-23 at 1-2)

49.    The actual power loss that MAGicALL was able to achieve with its 500kW-HE design was Confidential Information under both the 2009 NDA and the 2010 NDA. (ECF-194-57 at ¶36)

50.    Advanced Energy engineers "worked…with Eaglerise to ensure their design[s] meet our mechanical and electrical specification, as well as efficiency." (ECF-194-24 at 1)

51.    Advanced Energy paid a machine shop to cut a MAGicALL inductor in half, exposing each of the Key Design Features. (ECF-195-3 at 154:18-156:8; ECF-194-26)

52.    Rather than disposing of this MAGicALL inductor, Advanced Energy kept it in an unlocked, multi-use cabinet in a room to which several other engineers had access. (ECF-195-3 at 148:14-151:15)

53.     Advanced Energy shipped at least 65 MAGicALL inductors to China in 2012 without MAGicALL's knowledge. (ECF-194-56 at ¶¶28-31; ECF-194-57 at ¶37-38; ECF-194-27 at 1; ECF-194-4 at 188:14-189:2; ECF-194-28 at 2-3; ECF-194-29 at 1; ECF-194-30 at 3, ¶5)

54.     Advanced Energy admits that its employees had "dozens and dozens" of oral conversations with Eaglerise and that it cannot conclusively say that no one from Advanced Energy provided MAGicALL's Confidential Information to Eaglerise. (ECF-194-3 at 103:9-104:9; ECF-194-31 at 1; ECF-194-32 at 2; ECF-194-33 at 1)

**IV.    Advanced Energy's conduct caused MAGicALL's damages.**

55.     There is no evidence that Eaglerise's inductor designs prior to July 2012 used  ████████████████████████████████████████████████████████████ ██████ demonstrates it was not doing so. (ECF-194-57 at ¶¶18-21; ECF-194-3 at 91:1-19)

56.     As shown by Eaglerise's drawing of its "Design #2" on October 18, 2011, prior to July 2012, Eaglerise's design approach was to use ████████████████████████████ ████████████. (ECF-194-57 at ¶¶20, 29; ECF-194-13 at 1, 6)

57.     There is no evidence that Eaglerise's inductor designs for Advanced Energy used ████████████████████████████ prior to the July 2012 Disclosure. (*Id.*; ECF-194-3 at 91:1-19)

58.     Eaglerise's general design strategy used ████████████████████████ ██████████████████████. (ECF-194-57 at ¶33; ECF-194-34)

59.     The ████████ of Eaglerise's designs demonstrate that Eaglerise was using ████ ████████████████████████████████████████████████████████████ ████████████████████████. (ECF-194-57 at ¶33; ECF-194-35 at 1).

60.     Eaglerise created at least four different kinds of inductors that incorporated MAGicALL's Key Design Features: 72-1003048 (100kW), 72-1003049 (260kW) 72-1003050 (500kW), and 18020013-00 (500kW-HE). (ECF-194-57 at ¶¶40-41)

61.     There is no evidence that Eaglerise independently developed optimized inductor designs containing the Key Design Features. (ECF-194-56 at ¶¶36-37; ECF-194-57 at ¶¶45-46; ECF-194-3 at 95:24-98:22)

62.     There is no evidence that Eaglerise created inductor designs with the Key Design Features based on its employees' general experience or knowledge, including regarding how Eaglerise previously made transformers. (ECF-194-56 at ¶38; ECF-194-57 at ¶47; ECF-194-3 at 95:24-98:22)

63.     There is no evidence that anyone from Eaglerise ever accessed MAGicALL's website or obtained information about MAGicALL's inductors from any source other than Advanced Energy. (ECF-194-56 at ¶¶34, 39; ECF-194-57 at ¶¶43, 48; ECF-195-3 at 148:6-12; ECF-194-3 at 97:17-98:22)

64.     There is no evidence that Eaglerise created any inductor design for Defendants as a result of learning how to make inductors using the Key Design Features from a source other than Advanced Energy. (ECF-194-56 at ¶40; ECF-194-57 at ¶49; ECF-194-3 at 95:24-98:22)

65.     There is no evidence that any of the exceptions set forth in section 3 of the 2010 NDA applied to any portion of the Confidential Information (as defined in the 2010 NDA) that MAGicALL provided to Advanced Energy about (a) MAGicALL's 260kW, 500kW and 500kW-HE inductor designs, including MAGicALL's use of the optimized Key Design Features in those designs or (b) MAGicALL's use ███████████████████████████████████ ███████████████████████████████████, at the time Advanced Energy disclosed the

11

Confidential Information to Eaglerise or at the time Eaglerise created its inductors designs using the Key Design Features. (ECF-194-56 at ¶¶41-42; ECF-194-57 at ¶¶50-51)

66.    MAGicALL was Advanced Energy's sole supplier for the relevant inductors used in Advanced Energy's 100TX, 260TX, and 500TX inverters from 2010 to the date Advanced Energy switched to using Eaglerise's inductors in these products. (ECF-194-56 at ¶43)

67.    MAGicALL was also Advanced Energy's sole supplier for the relevant inductors used in Advanced Energy's 500NX inverters from 2011 to 2014. (*Id.*)

68.    But for Advanced Energy's improper disclosures to Eaglerise, which enabled Eaglerise to manufacture inductors that were copies or derivatives of MAGicALL's inductors using the Key Design Features, MAGicALL would have secured all of Advanced Energy's relevant inductor business in 2013-2016 because MAGicALL was Advanced Energy's only supplier of the relevant inductors for the 100TX, 260TX, and 500TX inverters. (ECF-194-56 at ¶44; ECF-194-57 at ¶52)

69.    Had Advanced Energy not purchased inductors from Eaglerise for the 100TX, 260TX, and 500TX inverters Advanced Energy sold to its customers, MAGicALL would have received this inductor business because between 2013 and 2016, MAGicALL was Advanced Energy's only other supplier of qualified inductors that fit in these inverters. (*Id.*)

70.    The following chart accurately describes (a) the number of Eaglerise inductors containing MAGicALL's Key Design Elements that Advanced Energy purchased from Eaglerise for the referenced part numbers, (b) MAGicALL's lost net profit per inductor it would have otherwise sold to Advanced Energy as a result of being the only available supplier, and (c) MAGicALL's total lost net profit on all such inductors:

|  | MAGicALL's Lost Net | Units Purchased | Total Damages (Net Profit x |
|---|---|---|---|

| Advanced Energy/ Eaglerise Part No. | Profit per Unit | from Eaglerise | Units Purchased |
|---|---|---|---|
| 72-1003048 | | | $255,336.30 |
| 72-1003049 | | | $435,483.44 |
| 72-1003050 | | | $944,739.88 |
| 18020013-00 | | | $6,547.84 |
| | Totals: | 2454 | $1,642,107.46 |

(ECF-194-56 at ¶¶45-46; ECF-195 at ¶43; ECF-194-36 at 2-9; ECF-194-4 at 145:2-14)

71.    As a result of Advanced Energy purchasing inductors from Eaglerise that would otherwise have been purchased from MAGicALL, MAGicALL lost net profits attributable to inductors that were incorporated into the 100TX, 260TX, and 500TX inverters that Advanced Energy sold to its customers. (ECF-194-56 at ¶47)

72.    Advanced Energy sold its inverters pursuant to written contracts, called Master Sales Agreements. (ECF-194-4 at 25:6-9; ECF-194-52)

73.    Under the Master Sales Agreements, Advanced Energy retained ███████ ████████████████████████████████████████████████████████████████ (ECF-194-52 at §10.1)

74.    The Master Sales Agreements also contained ████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████

75.    Under the Master Sales Agreements, Advanced Energy required its customers to, among other things: ██████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

76.     As a result of the protections afforded by the Master Sales Agreements signed by Advanced Energy with its customers, MAGicALL's inductors were covered by ████████████ ██████████████████████████████████████████ (ECF-194-52, §§10, 15)

## ARGUMENT

## I.    Standard of Review

Summary judgment should be granted when "there is no genuine dispute as to any material fact and … the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While the evidence must be viewed in favor of the nonmoving party, a factual dispute is not genuine where there is only a "metaphysical doubt as to the material facts." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1084 (10th Cir. 2006). Once MAGicALL has made a showing that there is no genuine dispute of fact, the burden shifts to the non-moving party to make a showing sufficient to establish an issue of fact on an essential element of the claim. *See S.E.C. v. Thompson*, 732 F.3d 1151, 1157 (10th Cir. 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## II.    Advanced Energy breached the 2010 NDA and MAGicALL is entitled to partial Summary Judgment on Count I of its Complaint.

The 2010 NDA is governed by Colorado law. (ECF-194-2, ¶ 8.1). To prevail on a breach of contract claim for the 2010 NDA, MAGicALL must establish that: (1) the 2010 NDA is a valid and binding contract; (2) MAGicALL has performed its obligations under the 2010 NDA; (3) Advanced Energy has failed to perform its obligations pursuant to the 2010 NDA; and (4) MAGicALL has been damaged by Advanced Energy's breach. *See Joseph Brazier, Ltd. v. Specialty Bar Prod. Co.*, Civil Action No. 06-cv-01416-WDM-KLM, 2008 WL 791942 at *9 (D.

Colo. Mar. 21, 2008) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)). Here, there is no genuine dispute of fact as to any of these elements.

   A.    **The 2010 NDA is a valid contract.**

The 2010 NDA is a valid and enforceable written contract and reflects the parties' mutual assent on all material terms. (ECF-194-56 at ¶10; ECF-194-2, ¶ 6; ECF-195-2 at Reqs. 8-9) The 2010 NDA has never been terminated and remains in full force and effect. (*Id.*) The 2010 NDA was supported by consideration because each party made promises to the other in the agreement. (*Id.*)

Moreover, there is no genuine dispute that the 2010 NDA prohibited Defendants from disclosing MAGicALL's Confidential Information. Advanced Energy admitted pursuant to Fed.R.Civ.P. 36 that the 2010 NDA was accepted by all of the Defendants. (ECF-195-2 at Reqs. 8-9)[2] Advanced Energy testified pursuant to Fed.R.Civ.P. 30(b)(6) that the 2010 NDA covered Confidential Information exchanged between MAGicALL and both "Advanced Energy in Fort Collins" and "AE Solar in Bend," provided it involved the parties' "discussions regarding design, manufacturing, and supply of magnetic components" after Advanced Energy acquired PVP and executed the 2010 NDA. (ECF-194-4 at 123:12-124:11) Advanced Energy further admitted that Defendants held themselves out as a single entity and that both Advanced Energy (Shenzhen) Co., Ltd and AE Solar Energy, Inc. were "wholly controlled" by their parent company, Advanced Energy Industries, Inc. (ECF-194-4 at 149:13-150:5) Advanced Energy also admitted that "with the purchase of [PVP], there became a separate group called AE Solar…which was an organization *within Advanced Energy*" responsible for its solar inverter business. (ECF-194-3 at 19:25-20:5)

---

[2] "Defendant" was defined by Advanced Energy to include all three Defendants. (ECF-195-2 at 1)

### B.    MAGicALL fully performed under the 2010 NDA.

There is no dispute that MAGicALL fully performed its obligations under the 2010 NDA. MAGicALL always maintained confidential information it received from Advanced Energy in strict confidence. (ECF-194-56 at ¶11)

### C.    Advanced Energy breached the 2010 NDA.

#### 1.    Advanced Energy breached the 2010 NDA by having Eaglerise make parts containing MAGicALL's Confidential Information.

The 2010 NDA precluded Advanced Energy from having Eaglerise make "any product or other item using, incorporating, or derived from any of [MAGicALL's Confidential Information]." (ECF-194-2 at ¶4)("Receiving Party shall not…have made…for any purpose any product or other item using, incorporating, or derived from any of Disclosing Party's CI"). Despite Advanced Energy's promise, Advanced Energy had Eaglerise make at least 2,454 inductors that incorporate and/or were derived from MAGicALL's Confidential Information, including inductors bearing part numbers: 72-1003048, 72-1003049, 72-1003050 and 18020013-00. (ECF-194-56 at ¶¶45-46; ECF-195 at ¶43; ECF-194-36 at 2-9; ECF-194-4 at 145:2-14) This conduct constitutes a breach of the 2010 NDA.

#### 2.    Advanced Energy breached the 2010 NDA by selling Inverters that incorporated Eaglerise inductors.

The 2010 NDA precluded Advanced Energy from selling "any product or other item" that used or incorporated any of MAGicALL's Confidential Information. (ECF-194-2 at ¶4)("Receiving Party shall not…sell…any product or other item using, [or] incorporating…any of Disclosing Party's CI"). Once Advanced Energy started including Eaglerise's inductors in its 100TX, 260TX and 500TX inverters, it was selling a product—the inverter—that was "using [or] incorporating" MAGicALL's Confidential Information—the Eaglerise inductors. Advanced Energy incorporated more than 2,000 Eaglerise inductors into the inverters it sold to its customers.

16

(ECF-194-36 at 2-9; ECF-194-4 at 145:2-14)  Advanced Energy's sale of inverters with Eaglerise inductors was a breach of the 2010 NDA.

> 3.    **Advanced Energy breached the 2010 NDA by improperly disclosing and using MAGicALL's Confidential Information.**

The 2010 NDA required Advanced Energy to "hold in confidence and not disclose to any third party" any of MAGicALL's Confidential Information. (ECF-194-2 at ¶2) As demonstrated above, Advanced Energy disclosed to Eaglerise that MAGicALL's 500kW inductor utilized ███ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ (ECF-194-57 at ¶26; ECF-194-10 at 3) Advanced Energy later sent Eaglerise images showing the size and shape of MAGicALL's inductors. (ECF-194-19; ECF-194-20; ECF-194-21 at 2; ECF-194-22 at 1-2) Advanced Energy did so even though MAGicALL owned its designs and had instructed Advanced Energy to keep its designs confidential. (ECF-194-37; ECF-194-38; ECF-194-39; ECF-194-40; ECF-194-41) Advanced Energy also sent Eaglerise the exact dimensions of MAGicALL's 500kW inductors. (ECF-194-18 at 1) All of this information was MAGicALL's Confidential Information and Advanced Energy breached the 2010 NDA by disclosing it to Eaglerise.

Further, Advanced Energy used MAGicALL's Confidential Information ██████████ ████████ to coach Eaglerise on how to make a more competitive product. Specifically, after learning that MAGicALL ████████████████████████████████, Advanced Energy immediately asked Eaglerise to provide quotes for designs that also ████████████████████ (ECF-194-14, ECF-194-16)

The undisputed circumstantial evidence further demonstrates that Advanced Energy improperly provided Eaglerise with information regarding MAGicALL's use ██████████████ ████████████████████████. Specifically, there is no evidence that Eaglerise had ever

designed an inductor using ███████████████████████████████ prior to July

2012. Even after the July 2012 Disclosure, Eaglerise's inductors were ██████████

██████████████████████████████████████████████████████████████

████████████████████████. (ECF-194-57 at ¶33; ECF-194-35 at 1). However,

after Advanced Energy cut a MAGicALL inductor in half, decided to "engage directly with

Eaglerise on inductor design," and had in numerous oral communications with Eaglerise about

inductor designs, Eaglerise was suddenly able to expand its manufacturing technique to include

creating inductors that contained MAGicALL's Key Design Features. (ECF-194-15; ECF-194-31

at 1; ECF-194-32 at 2; ECF-194-33 at 1) Coupled with the fact that there is no evidence that

Eaglerise independently developed inductor designs containing the Key Design Features and no

evidence that Eaglerise ever obtained information about the Key Design Features from any source

other than Advanced Energy, it is clear that Eaglerise's inductors incorporate the Key Design

Features only because Advanced Energy disclosed MAGicALL's Confidential Information to

Eaglerise. This evidence, while circumstantial, demonstrates that Advanced Energy breached the

2010 NDA.

### D.    MAGicALL has been damaged by Advanced Energy's breach of the 2010 NDA.

Between 2010 and 2013, MAGicALL was Advanced Energy's only supplier for the

inductors used in Advanced Energy's 100TX, 260TX, 500TX and 500NX inverters. (ECF-194-56

at ¶43) Eaglerise was only able to secure Advanced Energy's inductor business after it learned

MAGicALL's Key Design Features from Advanced Energy and incorporated those features into

Eaglerise's inductor designs.  Accordingly, Advanced Energy would have been forced to purchase

all of the inductors needed for these inverters *exclusively from MAGicALL* absent Advanced

Energy disclosing to Eaglerise how MAGicALL made its inductors.

Advanced Energy bought 2,454 inductors from Eaglerise that would have been, and should have been, purchased exclusively from MAGicALL causing MAGicALL to lose at least $1,642,107.46 in net profits. (ECF-194-56 at ¶¶45-46; ECF-195 at ¶43; ECF-194-36 at 2-9; ECF-194-4 at 145:2-14)  This amount reflects MAGicALL's damages for Advanced Energy's breach of its promises (a) not to have Eaglerise make "any product or other item using, incorporating, or derived from any of [MAGicALL's Confidential Information]" and (b) that it would "hold in confidence and not disclose to any third party" any of MAGicALL's Confidential Information. (ECF-194-2 at ¶¶2, 4)

MAGicALL's also suffered damages arising from Advanced Energy breach of its promise not to sell "any product or other item" that used or incorporated any of MAGicALL's Confidential Information. (ECF-194-2 at ¶4) Advanced Energy incorporated at least 2000 Eaglerise inductors into the 100TX, 260TX, and 500TX inverters it sold to its customers. (ECF-194-36 at 2-9; ECF-194-4 at 145:2-14)   As a result of Advanced Energy purchasing inductors from Eaglerise that would otherwise have been purchased from MAGicALL, as the sole supplier, MAGicALL lost profits.  MAGicALL is entitled to these damages caused by Advanced Energy's breach.

## CONCLUSION

There is no genuine dispute that the 2010 NDA is a valid, enforceable contract, that Advanced Energy breached that contract by having Eaglerise make inductors that incorporated MAGicALL's Key Design Elements, by disclosing MAGicALL's Confidential Information to Eaglerise, and by selling inverters using Eaglerise's knock-off inductors. There is also no dispute that Advanced Energy's conduct caused MAGicALL's damages. As such, for the foregoing reasons, MAGicALL is entitled to partial summary judgment on Count I of its Complaint.

Dated: February 23, 2021                    Respectfully submitted,


                                            s/ Michael E. Obermueller
                                            Michael E. Obermueller
                                            Emily B. Anderson
                                            WINTHROP & WEINSTINE, P.A.
                                            225 South Sixth Street
                                            3500 Capella Tower
                                            Minneapolis, MN 55402
                                            Telephone: (612) 604-6400
                                            FAX: (612) 604-6800
                                            Email: mobermueller@winthrop.com
                                            Email: eanderson@winthrop.com

                                            Attorneys for Plaintiff,
                                            MAGicALL, Inc.


## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the type-volume limitation set

forth in the Judge Domenico's Practice Standard III (A)(1).

                                            s/ Michael E. Obermueller

## <u>CERTIFICATE OF SERVICE</u>

 I hereby certify that on the 23rd day of February, 2021, I filed and served the foregoing **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (COUNT I)(CORRECTED)** via CM/ECF which will serve the following:

Darren E. Nadel, Esq.
Grace L. McGuire, Esq.
Matthew Freemann, Esq.
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
dnadel@littler.com
gmcguire@littler.com
mfreemann@littler.com

*Attorneys for Defendants*

s/ Michael E. Obermueller
Michael E. Obermueller

21234797v1